Fort v. SunTrust Bank. Good morning, Your Honors. David DeVito along with Stephen Koren on behalf of John Fort, Chapter 7 Trustee and Appellant. May it please the Court, the issue at the heart of this appeal concerns the proper characterization of the relationship between the debtor, IPG, and the defendant, SunTrust Bank. The record evidence, which was required to be viewed in the light most favorable to the trustee on summary judgment, establishes that that relationship in which IPG was totally reliant on the services and systems that it received from SunTrust and its day-to-day operations were intertwined with the SunTrust relationship, that evidence establishes that the relationship was far more than ordinary debtor-creditor relationship or lender-borrower relationship. To what extent did it extend beyond the boundaries of the contract between the parties? In a number of ways, Your Honor. You don't make any claims of breach of contract. This is all negligence related. That's correct. Negligence and breach of fiduciary duty, Your Honor. There is certainly a contractual overlay here because there were, I think, seven or eight contracts between the parties governing the various services, systems, technologies, software, things that were provided to IPG by SunTrust. But the point is that... I guess a corollary to Judge Duncan's question would be what duty was there on behalf of the bank that went beyond their contractual duties? Well, I think it's clear under both negligence principles and fiduciary duty principles that there was a duty based on their understanding of the reliance and the extent of the overlap of the relationship. For example, to consider the fact that by doing what they did, they were putting a company out of business. And so to put specifics on it, it would be a duty not to kill the company when they come and report to you voluntarily an internal theft at the company. So you know that if you pull the plug on this company, this company that has put $650 million through your bank in the last three years... Are they contemplating bankruptcy already? Contemplating. And I believe, as I recall, that there had been discussions with attorneys about bankruptcy. And it's interesting, the characterization that it killed the company would seem to be attributable to the... rather than SunTrust's discontinuation of trading as I believe it was on the online platforms at that time. Well, I think all of those questions go to causation, which you'll notice that neither one of the courts below went anywhere near causation. There's no conclusion that the company was already going to go bankrupt. And in fact, companies consider bankruptcy all the time. And that's a voluntary choice that they make. But here, SunTrust's actions left no company... left the decision a fait accompli because... So it's not correct that when Burgess met with SunTrust officials to report that Thaf, is that how you pronounce it, had stolen an unknown amount of money, explained that he did not know whether others were involved in the theft, or whether others who had access to IPG's passwords for SunTrust accounts, and that he had retained bankruptcy counsel and might have to shut IPG down? Most of that is accurate in terms of what was said. But there were a lot of conversations between Burgess and the bank. And the company was still and could still be operating, and certainly to the extent that there's a dispute in the record, and that there was no conclusion by either court below. Is there a dispute about those statements being made on January 29, 2008, immediately before... No, I don't think there is a dispute about... Oh, I'm sorry. Not a good idea to interrupt. Do you have any questions? Well, my understanding is that Burgess first finds out about the embezzlement on January 16, correct? And he doesn't even advise the bank, as far as I can tell from this record, until the 29th. That's 13 days have passed. Would you agree that that's the facts in the record? I know that there was a time lapse between, but I don't think it was a material time lapse. Well, a lot can happen in 13 days if somebody has access to passwords, for example. But going back, I don't think you ever actually answered Judge Duncan's question about the... claim that there was a special fiduciary relationship or a special duty of care beyond the contractual obligation on the bank's part. Where is the evidence in the record that the bank was doing anything other than opening accounts, doing routine monitoring of the accounts, that sort of thing? Where is that in the record? The evidence in the record, Your Honor, is that the IPG worked with SunTrust and its employees on a daily basis. They're in constant communication. And SunTrust knows that the services that it provides to IPG are integral to its operations. Doesn't that put pressure on them, frankly, when they are told that a chief officer, the CFO, has been embezzling funds for a period of time and has access to these accounts and that Burgess doesn't even know how much else FAF had done? Don't they have an obligation in part to protect their own client by trying to minimize any further harm by cutting down access to any of the accounts? Well, one, they didn't have the unilateral right to do that under all of their agreements. Two, that's a disputed issue in terms of what they thought they were doing and whether there was any risk. Because if you look at the record, there are a number of internal SunTrust assessments where they characterize the risk that they were facing as a result of this relationship as essentially nonexistent and fully secured by collateral. And I'll point out, which I think is critical, that in fact... The contractual relationship that usually exists between bank and customer and some sort of a negligence-related duty? Well, I think they're sort of two separate questions in the sense that one is breach and one is duty. Stand down for a second. What I think all of us are looking for is an evidentiary basis in the record for either one of these claims. So that would be helpful if you could point us to that. Well, I think, Your Honor, if you look at the case law about when can a duty arise on the part of a bank to one of its clients? And it says, well, the ordinary relationship is debtor-creditor. So what's an extraordinary relationship? Well, if your baseline of ordinary is what you see in the case law, a loan guarantor, someone with a checking deposit account, an IRA account. Those are ordinary relationships. This relationship had a situation where this business was fully dependent on everything that was provided to it by SunTrust. SunTrust went and opened accounts at banks all over the world solely to service IPG. But didn't IPG tell them which banks they wanted? The La Caixa Bank in Madrid, as I looked at those emails, that suggestion came not from SunTrust. SunTrust wasn't giving them advice and saying, here's a good bank in Madrid that you might want to use. IPG was going to SunTrust and saying, well, how about opening an account at this bank? So, again, where is the evidence in the record that SunTrust was giving maybe the kind of financial advice that might establish a fiduciary relationship? I don't see it in this record. Your Honor, I don't believe that advising is the only way for this relationship to transform from purely contractual to either a negligence duty or a fiduciary duty. What other ways are you pointing to? And you also said that SunTrust had no unilateral right to do what it did, but I would refer you to JA 658, which is a contractual provision which gives SunTrust the right to discontinue or refuse to offer you any account, service, or product at any time. So that would certainly seem to be a unilateral right to do what it did. Your Honor, that provision, if I'm not mistaken, is in the deposit account rules and regulations, which governs only the deposit account relationships. There are a number of other contracts, including the online treasury management agreement and the software license agreement. One of those requires written notice of termination. The other one requires 30 days advance written notice. Wasn't notice given orally to Burgess? Under the circumstances when passwords were outstanding that Mr. Burgess could not even account for, would not the actual notice be preferable to the 30 days notice provided for in the documents you referred to? No, because the point of those notice provisions is in recognition of the interconnectedness of this relationship. The IPG couldn't just pick up its accounts and walk across the street and restart its business. They were entitled to notice of this termination so that they could keep the business running. They did get notice. It was just oral rather than writing. Well, Your Honor, I think that you can't find a case anywhere that says the written notice is satisfied by not written notice. By actual notice? That reads the word written out of the contract. It's a simple plain language analysis. The case that the district court relied on for this notion of substantial compliance has nothing to do with written notice. It's a case about a real estate contract where someone was trying to get out of it by saying that, well, the contract required me to hand a check to the seller and, in fact, I handed the check to the seller's attorney at the instruction of the seller's attorney and they said, well, no, we're not going to let you out of the contract for that. You mentioned case law. I didn't see a whole lot of case law supporting your position that the bank had a fiduciary relationship. Can you point us to some clear authority that indicates when a bank has a fiduciary relationship to a client such as yours? Sure. The South Carolina case law is admittedly a little skin. I think the best South Carolina case on the point is the Steele case, Steele v. Victory Bank. That's a case where, and I think, Your Honors, if you look at that case, the party suing the bank there was a whole lot more ordinary of a customer than IPG and yet the court said that there was a tribal issue on fiduciary duty. If you look at some cases that we cited from Florida and Kansas, there's a case called Linden Place, there's a case called Capital Bank. We have to apply South Carolina law, don't we? Yes, you do. And I think South Carolina law would be consistent with all of these cases in terms of the statements in the South Carolina case law say, well, if the relationship is ordinary, then pure debtor-creditor, no duty. But if it exceeds ordinary, then duties may arise. What are the examples where they have found that it exceeds ordinary? That's what I'm looking for. Well, the Steele case seems to me a much simpler fact pattern and that is a woman gave some money to someone to purchase CDs on her behalf at the bank. That person who she gave the money to was known to the bank as a disbarred lawyer. And basically as a result of that, that created a special relationship based on the knowledge that the bank had about the reliance that was being placed on this shady character, if you will, and that created a tribal issue as to a breach of fiduciary duty. Unfortunately, the South Carolina cases don't come anywhere close to this fact situation, but I think the principles, the statement in the district court's opinion that really is most troubling is this notion that, well, you weren't a typical bank customer, but the character of what you were doing in those accounts is the same as an average depositor. An average depositor does not have a policy exception from the highest levels of the bank, the Anti-Money Laundering Committee of the bank, blessing this relationship which is otherwise prohibited by the bank. The bank won't do business with money service businesses, but they... ...sophisticated relationship than Joe Doak's depositing his paycheck into the bank account, into his bank account once a month, but it's still the bank tendering services for which it offers no special expertise in return. It's not the trust department administering an estate and exercising discretion on the purchase and sale of assets within the estate that is in its control by virtue of being a fiduciary. I mean, as I understand what the bank and the company did in this case, they offered certain services related to international cash transfers, but they didn't give any advice to the company on how to trade, what currencies to deal in. You know, that was their business. They just gave them a platform that they could have sold to any other comparable client that wanted to use it and qualified. Well, I'm not sure I fully agree with that. I think in addition to just providing the platform, they provided employees, they provided constant daily service so that whenever we called, because there were parts of our business that we could not conduct without talking to them about it. In other words, we don't know whether you've received customer money in some of these accounts. We don't know whether you've delivered money to our beneficiaries overseas. So it's not like, and as a matter of fact, they weren't offering to do this business for just old anybody. In fact, the bank has a policy that it won't do business with companies like this, but it wanted to do business with IPG because the relationship was extraordinarily profitable, and I see that my clock is running out. So for those reasons, we ask you to vacate and remand. Thank you. Thank you very much. You have some time on rebuttal. Ms. McWilliams. May it please the court. I'm Susie McWilliams, and my colleague, Jenny Cleverius, have the privilege of representing SunTrust in this matter. It's been going on 10 years now. The genesis of this appeal is a traditional contractual relationship between a bank and its customer. And, as Judge Agee noted, there is no breach of contract claim here. Instead, the appellant invites this court to create a tort under South Carolina law arising from the contractual relationship. Yet, there is no such tort under South Carolina law. I mean, it is well settled in South Carolina and in other states that the courts have declined to impose tort duties on the traditional bank-customer relationship, except in very rare instances courts in South Carolina have held no duty to an investor in a Ponzi scheme allegedly carried out through the services of the bank, no duty to a guarantor where the bank loans money to the son's business, no duty to explain a guarantee, no duty to purchasers of property on which the bank owns the lien, no liability for the enablement of impostor fraud by the issuance of negligently issued credit cards. There is a case in South Carolina, and we cited it, in which the court recognized tort liability on the part of a bank, and that's the Murray v. Bank of America case. And we cited that case because it supports our position. In Murray, an individual had a lost driver's license, an impostor comes and sets up a checking account and begins writing checks. When the customer finds out about it, she comes to the bank, speaks with a vice president of BOA, and says, close the account, and I need you to also tell these merchants that this is a fraudulent account. Bank of America waits 30 days before they eventually do something. Well, SunTrust didn't wait. SunTrust did what BOA failed to do in the face of a customer coming in, and this was not a simple casual call from Mr. Burgess. He runs in, in frantic state, and says, there's been an embezzlement, as this court has previously, as Judge Duncan, you asked about. The fact of the matter is, SunTrust acted promptly. It ended the online access. There were passwords out there. Excuse me, Mr. Burgess had no idea who else might be involved. And so, in that instance, if the court were looking at the distinction between Bank of America and SunTrust, SunTrust did what it was supposed to do. And what about the argument, though, that the IPG makes that they needed information, they needed certain records to try to minimize the damage, the relationship with the customers, et cetera,  in getting that information to them, or got it to them in a format that they could use? Well, there are two answers to that, Judge Marinkov. First, SunTrust gave to IPG, every month, written statements for both accounts, the direct deposit U.S. dollar account and the foreign currency account, every single month. And what did the IPG people do?  They didn't do anything with them. And that continued even after this announcement about Burgess? Well, you recall that on January 29th, when Mr. Burgess comes in, he tells the bank, I've stopped trading. He stopped trading. The access was only temporarily halted. Within four days, IPG was able to look back at all of its records. It had the paper records, but to the extent that it needed to look online. And so, that, Your Honor, I don't know if it could have. But it didn't. We know that Mr. Burgess told the bank. He goes to Mr. Graham and says, you know, I'm going to have to reinvent myself. I've got to start over. And that's exactly what he did. And it's in the record. There were a comptroller, a currency or somebody that told him to stop. That's correct, Judge Agee. And I think Mr. Burgess has, in some of his emails, told his other traders, I think the FBI has told me that the Secret Service is going to stop. And what was the temporal, when did that happen vis-a-vis the bank's online, cutting off its online, its trading platforms? Well, what we know, Judge Duncan, is that, this is according to what Mr. Burgess tells the bank, that Mr., and from the record, Mr. Paff goes missing. And at some point he was discovered missing sometime in the 13th or the 15th of January. The internal, I dare say not auditor, but someone who was brought in to help Mr. Burgess look at the books says, I think you're missing money. And then finally, once Mr. Burgess has arranged for Mr. Paff to be arrested, and the Secret Service or the FBI, whoever it is he's dealing with, to try to get to the bottom of it, then he comes to the bank and the service is halted. SunTrust doesn't deny that, but in the face of what it was told, we submit it as appropriate. And then within four days, what Mr. Burgess then said was, well, we want to be able to look online and figure out which, which trades may still be out there that we need to unwind those deals. And SunTrust literally worked for hundreds of hours, provided, again, the same written monthly statements that IPG had gotten every single month, never looked at, never reported an unauthorized transaction, never questioned at all. And so I think this is probably the crux of why the answer to whether or not this court should create a new tort is no, is that the SunTrust acted reasonably. Now, it sounds to me like, and if you read the appellant's brief, what they're arguing about is technical notice. They're saying, well, yes, you could have cut it off, but you should have given it to us in writing. They got actual notice. That's a breach of contract claim. It's a breach of contract claim, and it's not in front of this court. But I would note for the court, and I'm sure the court knows this, the, the, the appellant brought a breach of contract claim. They had it accompanied by a fraudulent act. The bankruptcy court found no evidence of any fraudulent act in cutting off the access or any of that. And so recommended it be summary judgment be entered. Judge Hendricks at the district court agreed, and there was no appeal. So if this were a breach of contract claim, then maybe there would be some toehold for the, for the appellant's arguments. But the fact of the matter is there was no, there's no evidence of any damage. What IPG had done was cease trading. They started trying to figure out how to pay back the money that they had for the, to be able to recall any transactions that could be unwound. And in fact, as the record shows, Mr. Burgess was already reinventing himself. He did. He was setting up FX Transfers. It's the exact same business using the same software he used when he was IPG. He's in business today. He uses Fifth Third. He had that going almost immediately. But in the record, I was noting that there was an email from IPG on February 1st. So that would be two days. It's at 3-0-1 in which it stated that according to Burgess regulators law enforcement have ordered IPG to stop all transactions until the full extent of the fraud is determined. So there would really only be those two days when the online access would have made a difference? I think that's correct, Judge Duncan, but that also, you would have to assume that they were also going to continue doing business, which Mr. Burgess informs the SunTrust officials in Greenville when he runs in hair on fire saying, whoa, you know, stop, I've got an embezzler. But there were no such transactions. This might be a different case if in fact, and it was, and then there was a breach of contract claim before this court, if in fact there had been some huge transaction that should have closed and should have, you know, would have had been bigger than a quarter of a million because that's how much we know at least Mr. Paff stole. But just assuming that, but there's no evidence in the record of that. In fact, what the record shows is that this business failed because it had a huge embezzlement and then it otherwise commingled the funds from its customers and paid out its salaries, commissions, bonuses, car payments for Mr. Burgess and his wife. The fact of the matter is they were not operating in an appropriate commercial manner. The, I think, of all of Mr. DeVito's proffers of information, the one that he focused on to a considerable extent to support the argument that there was a special relationship is the fact that SunTrust did not normally do business with money service businesses and required a special exception from their, I believe, antitrust department to enter into that contract with IPG. Can you respond to that? Yes, Judge Duncan. What Mr. DeVito was, I believe, was referring to is there's in the record about two years into the relationship under the Anti-Money Laundering Act SunTrust was required to monitor these types of businesses and in order to continue with IPG it required information from IPG about whether or not it was trying to monitor its own practices to avoid against money laundering. And so the documentation that was put together in June of 07, now seven months before the embezzlement is discovered and the business basically stops. It is true that SunTrust was continuing in its obligations to comply with federal law to make sure that it was monitoring such businesses. But the fact that the SunTrust decided to continue with this business based on the representations from IPG if you look at the record that they said oh yeah we've got our own anti-money laundering we use a security business to monitor these transactions that still does not change the relationship. Were there other exceptions to the policy that SunTrust granted? Or is it in the record? It is not in the record Judge Duncan. But I don't think if one looks at the paperwork Yes Your Honor thank you. And of course Opposing counsel cited a case I've already forgotten the name of it Steele Steele and Opposing counsel says that's a basis in South Carolina law to find a either extra contractual duty or the basis for a fiduciary relationship. Can you respond to that tell us a little bit about that case why it would not apply here? Yes Judge Agee the Steele case involved active fraud of which the bank became aware and the court ruled that there may be a question of fact as to whether or not the relationship between the depositor and the bank became more than the traditional one. And it was based on the bank's knowledge. I would submit that that's consistent. I don't know I confess Judge Agee I don't know whether on remand if a fiduciary duty was established but that is actually consistent with the Murray case as well. Because in each instance the bank has absolute direct knowledge actual knowledge of fraud that has been reported by its customer and it takes it fails to take in Murray it failed to take a step and there was a question about that as well in the Steel v. Victory bank which is a bank actually that ended up I think you said earlier that in fact SunTrust did not want to be in the position of Bank of America once they were put on notice by Burgess that there had been this embezzlement and again this obtaining of passwords and the concern that there might be other monies taken it seems to this court there are questions that have been put by this court as to what is there in the record that changes the relationship and again if the court looks at South Carolina law there's nothing in this record that changed the relationship between IPG and SunTrust now the suggestion that they were dependent on the bank to be able to conduct their trades and that sort of thing I would submit Nixon Pruitt my law firm is dependent on our banking relationship we have conversations with them we can't get our bills out we can't process payments when our bills go we need our bank and our bank but the bank retains the right just like SunTrust did here it's a contractual relationship and that's all it is but to suggest that the mere fact that a depositor or a customer needs the bank in order to conduct its transactions that doesn't change the relationship  the bank and the customer but on the 29th doesn't the relationship possibly change because at that point the bank has now put on notice of this problem does that create a special obligation now on the part of the bank how do you handle the problem well Judge Brinkman that's an excellent question and I think that under the rationale I've put forth actual knowledge it is true that the bank knew at that point there was a tremendous risk to IPG to the bank with regard to possibly millions that had been embezzled from this customer but the record is also clear it's not refuted that what SunTrust immediately started doing was helping the customer figure out and they spent hundreds of hours not only recreating all the paper records that IPG for whatever reason had not maintained but it restored access within four days and so again since we are traveling in what the plaintiff claims is a negligence cause of action or breach of fiduciary duty then the bank's conduct gets you this court can review it and was it reasonable under the circumstances if we were solely talking about a breach of conduct. But I'm sorry but is that then a question of fact which would say that one should not grant summary judgment and is that not why the bankruptcy judge recommended not granting summary judgment? Your Honor I think no I think the summary judgment is appropriate because the bankruptcy judge only says the relationship she never makes a finding as to the timing that you have raised your question Your Honor. What she says is well I think the relationship was something else but beyond that this case is not any different than the reason there was liability in Murray was that the bank failed to do what the customer wanted. This bank did not SunTrust did not fail to do. There is not a question of fact. If again you are going to travel in negligence which we submit there is no duty here but there is no breach and they must also establish some question approximately caused damages. I would call to the court's attention the finding of fact of the bankruptcy judge. It is finding of fact 87 and this is not disputed. You have heard nothing from the appellant. It is not in the appellant's briefs as well. What Judge Burris found was that from the time that in January of 2008 to this day IPG has never been able to keep track of its expenses, its profits, its losses because of its own poor record keeping. Respectfully, if this court were to say I think there might be a question as Judge you have raised with respect to whether or not a bankruptcy judge   keep track of its losses and its profits, none in the record. In fact, I would submit that there is no evidence in the record that any damages flowed from the way in which the bank  operating. Even with IPG, the account was not closed summarily. It didn't close until sometime later in the summer. By that time, IPG had reinvented itself. Mr. Burgess was over there at a company called FX Transfers was going to town. He does not want to go ahead and put the company into bankruptcy in June of 2008. The fact of the matter is they live and die by what the bankruptcy court found in the findings of fact. Judge Burgess specifically says to this day they cannot say what its income, expenses, or profits should have been because it failed to keep adequate records. Not the temporary denial of access to the online trading platform. I see I'm about out of time. I think you can complete your response. It was IPG's failure. I could have gone through with the court  numerous defects that, again, the bankruptcy court found in how IPG transacted its business which led the court to that conclusion. Thank you very much. We would obviously  court to affirm the summary judgment below. Thank you. Thank you. Mr. DeVito, you have some rebuttal time? Is the still case cited in your briefs? I couldn't find it. I don't believe it is. It's cited in the district court's opinion. I didn't find it either. How do you spell that? S-T-E-E-L-E versus victory bank. Thank you. Just to follow up on a point related to that, I think if you look at the principle of the bank, it's based on the character of the relationship. That's where you get the principles that well, where you exceed the confines of the ordinary, that's where the duties rise. I'd like to respond to that. The answer is change the passwords. That's what everyone had agreed to do when Burgess went to the bank. In fact, the bank prepared the paperwork to change all the passwords. Burgess signed it and they were going to change the passwords and that was the simple answer. It was only after that the bank met internally and then issued the shut the company down directive and that's what we submit was the breach of duty. But there could be no transactions anyway. According to the IPG email, IPG had been instructed not to engage in any transactions. So, I'm just I'm still struggling. I'm struggling with two things. First of all, I've never understood you to identify something that takes this relationship out of the contractual. And second, given the fact that IPG could not engage in online transactions anyway, what did SunTrust do that, in your words, killed the company? I'm not sure that it's undisputed that they couldn't engage in transactions. I'm going specifically on the email from December 29th. Yes, I think that's what the email says. But, until SunTrust pulled the plug on the ability to conduct transactions and the ability That was before. I'm talking about December, I'm sorry, January 29th and the email was February 1st or 2nd. In terms of the timing, yes, but there was no reason why they couldn't continue to conduct business. Except that they weren't. That's what an email said on January 13th. But, certainly, I believe there's a conflict in the record. But you can't defeat summary judgment with a conflict in your own evidence. I don't think that email that you read from, Your Honor, says definitively that the company could no longer conduct business. And I think there's other evidence in the record that says they could. According to Burge's regulators and law enforcement have ordered IPG to stop all transactions. I'm sorry, I just don't see anything ambiguous about that. At that moment in time? On February 1st. Okay. Was there any evidence in the record that the FBI or anybody else authorized them to start having transactions again? No, I don't think there's evidence either way. But I don't think that the FBI was authorized to do that. Thank you. Thank you. We will come down in Greek Council and take a short recess.
judges: Allyson K. Duncan, G. Steven Agee, Leonie M. Brinkema